[No. 11757-2-I.   Division One.   June 11, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. ANDREW VARGAS, *Appellant*.

*E. Paul Giersch,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Kurt P. Hermanns, Deputy,* for respondent.

DURHAM, C.J.—Andrew Vargas appeals his conviction of first degree theft. During the summer of 1981, Vargas was the manager of the Rip Tide Apartments in Seattle. A number of the tenants paid their rent to Vargas in cash and received receipts. Some of these payments were never deposited into the Rip Tide's bank account. Vargas was arrested and charged with theft, and was convicted following a jury trial. On appeal, Vargas claims that the trial court erred by refusing to instruct the jury that theft requires an intent to permanently deprive another of property or services.

The statutory definition of theft provides three ways in which the crime can be committed:

(1) "Theft" means:
(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or
(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or
(c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him of such property or services.

RCW 9A.56.020(1). However, "wrongfully obtains" or "exerts unauthorized control" (subsection .020(1)(a)) is defined to include both theft by taking and embezzlement.

"Wrongfully obtains" or "exerts unauthorized control" means:

(a) To take the property or services of another; or
(b) Having any property or services in one's possession, custody or control as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian, or officer of any person, estate, association, or corporation, or as a public officer, or person authorized by agreement or competent authority to take or hold

such possession, custody, or control, to secrete, withhold, or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto;

RCW 9A.56.010(7). Taken together, these statutes set out four distinct types of theft: theft by taking, embezzlement, theft by deception, and appropriation of lost or misdelivered property.

Vargas was originally charged by information with theft by deception. RCW 9A.56.020(1)(b). At trial, the State orally amended the information to charge Vargas pursuant to .020(1)(a) as well (theft by taking or embezzlement). The State apparently intended to utilize only the embezzlement alternative of .020(1)(a), so that Vargas would be charged with embezzlement and theft by deception.

Vargas first argues that intent to permanently deprive is necessary to support a conviction of theft by deception. We disagree. For each of the four types of theft, RCW 9A.56-.020(1) requires only the "intent to deprive" the victim of property or services. However, "intent to *permanently* deprive" has been judicially required in cases of theft by taking. *State v. Burnham,* 19 Wn. App. 442, 445, 576 P.2d 917 (1978). The rationale for this holding was that the theft statute did not abrogate the intent requirements of common law larceny. Since statutory theft by taking corresponds to common law larceny, the *Burnham* court applied the common law rule that larceny requires an intent to deprive the owner permanently of his property. *See* R. Perkins, *Criminal Law* 266 (2d ed. 1969).

Where the statutorily defined crime was not larceny at common law, our courts have applied the intent requirement as provided by the statute. Thus, it has been held that intent to permanently deprive is not required for embezzlement. *State v. Dorman,* 30 Wn. App. 351, 355, 633 P.2d 1340 (1981). Similarly, where the statutorily defined theft resembles a form of common law larceny, but our Supreme Court has treated the statutory offense as distinct from larceny, the common law intent requirement does not

apply. Thus, it has been held that intent to permanently deprive is not required for the appropriation of lost or mis-delivered property. *State v. Woll*, 35 Wn. App. 560, 566, 668 P.2d 610 (1983), citing *State v. Olds*, 39 Wn.2d 258, 260, 235 P.2d 165 (1951).

At early common law, the act of obtaining title to another's property by deception was not a crime, but merely gave rise to a civil action. Theft by deception, in the early view, lacked the larcenous element of a trespass, the trespass being avoided by the fraudulent procurement of the consent of the victim. Later courts held that the fraud vitiated the consent, and found a constructive trespass in theft by deception. R. Perkins, at 296. Nevertheless, not every theft by deception constituted larceny. For example, if the thief obtained property from another by fraudulently representing that he intended only to borrow it, his possession of the other's property was a trespass, and hence larcenous. However, if the thief fraudulently induced the owner to part with *title* as well as possession of the property, it was held not to be a trespass, and hence not larcenous. The theory invoked for this distinction was that, if title passed to the thief, his appropriation was of his own property and thus could not be a trespass. R. Perkins, at 246–47.

Because Vargas fraudulently induced the tenants of the Rip Tide to part with "title" to their rent payments, his acts were not larceny at common law. Pursuant to the *Burnham* analysis, therefore, the common law "intent to permanently deprive" is not required here.[1] However, even

---

[1] The complex common law history of theft by fraud or deception highlights the difficulty with the *Burnham* method of reading the common law into a codified criminal statute. The common law of larceny, in particular, contains a number of intricate doctrines which were more the result of historical circumstances than of any coherent theory of theft. For example, larceny was a common law felony, the penalty for which was execution. Some of the fine distinctions in the law of larceny can be attributed to judicial reluctance to impose the death penalty. Perkins urges that the disparate common law offenses be abolished in favor of a systematic statutory scheme. R. Perkins, at 233. It is arguable that this was precisely the intent of the Washington Legislature when it codified the crime of theft in RCW 9A.56.020.

if Vargas' acts did amount to common law larceny, the Washington Supreme Court has never applied the common law intent requirement to the statutory offense of theft by deception. *State v. Williams,* 163 Wash. 419, 427–28, 1 P.2d 307 (1931), *modified,* 166 Wash. 704, 8 P.2d 1118 (1932); *State v. Wheeler,* 101 Wash. 293, 172 P. 225 (1918). Although these cases construed a predecessor theft statute, they indicate that our Supreme Court has distinguished the statutory offense of theft by deception from its common law counterparts. Accordingly, we hold that theft by deception, as defined in RCW 9A.56.020(1)(b), does not require the intent to permanently deprive another of property or services.

Pursuant to the amended information, Vargas was charged alternatively with embezzlement and theft by deception. RCW 9A.56.020(1)(a), (b). The jury was instructed that it could convict Vargas of theft if it found that he either wrongfully obtained or exerted unauthorized control over the property (RCW 9A.56.020(1)(a)), or that he obtained it by color or aid of deception (RCW 9A.56-.020(1)(b)). However, the instruction defining "wrongfully obtains or exerts unauthorized control" set forth both the embezzlement and theft by taking alternatives of RCW 9A.56.020(1)(a):

> Wrongfully obtains or exerts unauthorized control means *to take wrongfully the property or services of another* or, having any property or services in one's possession, custody or control as an employee or person authorized by agreement to take possession, to secrete, withhold or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto.

(Italics ours.) Instruction 8.

■ Vargas argues that the reference in instruction 8 to theft by taking requires an instruction regarding intent to permanently deprive. Had this case involved a theft by taking instead of or in addition to embezzlement or theft by deception, Vargas' argument would be well taken. How-

ever, the facts of this case do not support a conviction for theft by taking. The distinction between embezzlement and theft by taking (larceny) has been stated as follows:

> The chief distinction between the two crimes lies in the manner of acquiring possession of the property. In embezzlement, the property comes lawfully into the possession of the taker and is fraudulently or unlawfully appropriated by him; in larceny, there is a trespass in the unlawful taking of the property. *Embezzlement contains no ingredients of trespass, which is essential to constitute the offense of larceny.*

(Italics ours.) *State v. Smith,* 2 Wn.2d 118, 121, 98 P.2d 647 (1939) (quoting 18 Am. Jur. *Embezzlement* § 3, at 572). Vargas' actions were either embezzlement, which involves no trespass, or theft by deception, where trespass is avoided by fraudulently procuring the victim's consent to the transfer of title to the property. Under either characterization of the facts of this case, no theft by taking occurred. Thus, it was not error to refuse the proposed instruction regarding intent to permanently deprive.[2]

The judgment is affirmed.

ANDERSEN and SCHOLFIELD, JJ., concur.

---

[2]Although Vargas does not assign error to it, the reference to theft by taking in instruction 8 was erroneous. Before the jury can be instructed on and allowed to consider the various ways of committing a crime, there must be sufficient evidence to support the instructions. *State v. Golladay,* 78 Wn.2d 121, 137, 470 P.2d 191 (1970). Because the facts in this case do not support a theft by taking, it was error to refer to it in the instructions. By the same token, however, the error was harmless because the record affirmatively establishes that the jury could not have convicted Vargas of a theft by taking. *State v. Wanrow,* 88 Wn.2d 221, 237, 559 P.2d 548 (1977).