[No. 21635-0-I. Division One. May 15, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSEPH
KOMOK, *Appellant.*

*Neil M. Fox* and *Julie A. Kesler* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Georgina D. Sierra, Deputy,* for respondent.

FORREST, J.—Joseph Komok appeals from his conviction for theft in the third degree. We affirm.

On August 24, 1987, Joseph Komok and his sister, Rose, entered the Lamonts store in West Seattle. They were observed by a Lamonts security officer. The security officer saw Rose conceal several items of clothing under her sweatshirt. He testified that the appellant seemed to shield his

sister as she was concealing the merchandise. The appellant stayed within the store as his sister exited and was apprehended. He was subsequently arrested and charged with theft in the third degree. He was found guilty as charged on January 4, 1988. The appellant raises the following two issues on appeal: (1) did the information charging the appellant with theft in the third degree sufficiently apprise him of each element of the charge against him?; and (2) did the trial court's written findings of fact and conclusions of law properly find the appellant guilty of all elements constituting theft in the third degree?

### ELEMENTS OF THEFT

Komok claims that his right under the sixth amendment to the United States Constitution to "be informed of the nature and cause of the accusation" was violated because the information, which charged using the statutory language, did not state that the appellant intended to *permanently* deprive Lamonts of the goods. In *State v. Burnham,* 19 Wn. App. 442, 576 P.2d 917 (1978), Division Two added "permanently" as an element to RCW 9A.56.020(1)(a) in cases of theft by taking. We decline to follow this case.

In *Burnham,* the defendant appealed after conviction for theft in the second degree. The defendant had returned the property he stole before being charged with theft. He claimed the jury instruction was improper because it failed to require the State to prove he acted with the intent to permanently deprive the owner of his property. *Burnham,* at 444. The court stated:

> The common–law rule and the apparent majority rule in this country, is that the intent to steal requires that the defendant act with the intent to permanently deprive the owner of his property. Although this requirement is satisfied by proof that the defendant acted with an intention to create an unreasonable risk of permanent loss to the owner, a showing that defendant acted only with the intent to borrow the property is not sufficient to support conviction. We believe enactment of RCW 9A.56 did not abrogate the common–law intent requirement and hold that the intent to permanently deprive remains an

element of the crime of theft as defined in RCW 9A.56-.020(1)(a).

(Footnote and citations omitted.) *Burnham,* at 444–45.[1]

RCW 9A.56.020(1) provides in part:

"Theft" means:

(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or

(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or

(c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him of such property or services.

"Deprive" is defined in RCW 9A.56.010(5), which states "in addition to its common meaning [deprive] means to make unauthorized use or an unauthorized copy of records, information, data, trade secrets, or computer programs". None of the statute's sections include intent to *permanently* deprive as an element of theft.

 The Legislature has power to define any act as criminal and to fix its elements.[2] This includes the power to supersede common law definitions of crimes.[3] As originally introduced in the Washington State Senate, section 9A.56.010(1) of the Revised Washington Criminal Code defined "theft" as "[k]nowingly to wrongfully obtain or exert unauthorized control over the property of another

---

[1]We are aware that *Burnham* correctly states the general rule that theft requires the intent to permanently deprive the owner of his property. 3 C. Torcia, *Wharton on Criminal Law* § 360, at 317 (14th ed. 1980); R. Perkins, *Criminal Law* 266–67 (2d ed. 1969); Annot., 82 A.L.R.2d 863 (1962).

[2]*State v. Tyson,* 33 Wn. App. 859, 861–62, 658 P.2d 55, *review denied,* 99 Wn.2d 1023 (1983); *State v. Mundy,* 7 Wn. App. 798, 800, 502 P.2d 1226 (1972).

[3]*Seattle v. Buchanan,* 90 Wn.2d 584, 584 P.2d 918 (1978).

with intent *permanently* to deprive him of such property". (Italics ours.)[4]

As ultimately enacted, however, RCW 9A.56.020(1)(a) deleted the word "permanently" from the definition of "theft". This demonstrates the intent of the Legislature to depart from the common law definition of theft. When the Legislature defines the elements of a criminal act, it is not for the courts to reject this exercise of lawmaking power, unless unconstitutional, by tenaciously clinging to previous formulations. *Burnham* failed to consider the legislative history of RCW 9A.56.020.

The legislative intent behind enactment of RCW 9A.56-.020(1) and the definitions in RCW 9A.56.010 was to collect previous disparate and complex forms of theft and larceny into a unified, systematic statutory scheme.[5] The definition of "wrongfully obtains or exerts unauthorized control" exemplifies the Legislature's consolidation of offenses.[6]

---

[4]Senate Bill 384, 42d Legislature (1971), at 51; Comment, *A Hornbook to the Code*, 48 Wash. L. Rev. 149, 248 (1972).

[5]*State v. Thorpe*, 51 Wn. App. 582, 585, 754 P.2d 1050, *review denied*, 111 Wn.2d 1012 (1988). The preexisting law is exemplified by *State v. Olds*, 39 Wn.2d 258, 235 P.2d 165 (1951), where the court held that the subsections of the previous larceny statute, Rem. Rev. Stat. § 2601, each constituted separate and distinct crimes, the elements of which were derived from their common law antecedents.

[6]RCW 9A.56.010(7) states:
"'Wrongfully obtains' or 'exerts unauthorized control' means:
"(a) To take the property or services of another;
"(b) Having any property or services in one's possession, custody or control as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian, or officer of any person, estate, association, or corporation, or as a public officer, or person authorized by agreement or competent authority to take or hold such possession, custody, or control, to secrete, withhold, or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto; or
"(c) Having any property or services in one's possession, custody, or control as partner, to secrete, withhold, or appropriate the same to his or her use or to the use of any person other than the true owner or person entitled thereto, where such use is unauthorized by the partnership agreement;"

Subsequent to *Burnham,* the cases have held that "deprive" in RCW 9A.56.020(1) does not mean *permanently* deprive under subsection (a) when the facts constitute common law embezzlement,[7] under subsection (b) (theft by deception),[8] nor under subsection (c) (misappropriation of lost or misdelivered property).[9]

*Burnham,* in conjunction with *State v. Dorman,* 30 Wn. App. 351, 633 P.2d 1340, *review denied,* 96 Wn.2d 1019 (1981), *State v. Woll,* 35 Wn. App. 560, 668 P.2d 610 (1983) and *State v. Vargas,* 37 Wn. App. 780, 683 P.2d 234 (1984), gives the definition of "intent to deprive" under RCW 9A.56.020(1)(a) a meaning different from the other subsections of the same statute and, indeed, a different meaning in the same subsection depending upon the facts. To charge under subsection (a), the prosecutor must analyze the facts under the common law to determine whether they constitute "theft by taking", in which case *permanently* must be added as an element; or "embezzlement", in which case *permanently* need not be added as an element. When the facts are uncertain,[10] prosecutors will need to include the

---

[7]*State v. Dorman,* 30 Wn. App. 351, 633 P.2d 1340, *review denied,* 96 Wn.2d 1019 (1981); *State v. Vargas,* 37 Wn. App. 780, 683 P.2d 234 (1984); *State v. Slemmer,* 48 Wn. App. 48, 738 P.2d 281 (1987).

[8]*Vargas,* at 784.

[9]*State v. Woll,* 35 Wn. App. 560, 668 P.2d 610 (1983).

[10]*State v. Vargas,* at 783, explains some of the complexities of charging for theft under the common law:

"At early common law, the act of obtaining title to another's property by deception was not a crime, but merely gave rise to a civil action. Theft by deception, in the early view, lacked the larcenous element of a trespass, the trespass being avoided by the fraudulent procurement of the consent of the victim. Later courts held that the fraud vitiated the consent, and found a constructive trespass in theft by deception. R. Perkins, [*Criminal Law*] at 296 [(2d ed. 1969)]. Nevertheless, not every theft by deception constituted larceny. For example, if the thief obtained property from another by fraudulently representing that he intended only to borrow it, his possession of the other's property was a trespass, and hence larcenous. However, if the thief fraudulently induced the owner to part with *title* as well as possession of the property, it was held not to be a trespass, and hence not larcenous. The theory invoked for this distinction was that, if title passed to

element *permanently* to charge, or risk a defective information. The prosecutor then has the burden of proving this additional element. This is an unsatisfactory consequence of *Burnham*'s incorrect interpretation of RCW 9A.56.020-(1)(a).

*Burnham* unnecessarily reintroduces the common law distinctions between the forms of theft. This result is not required by the language of RCW 9A.56, circumvents legislative intent, and places an additional burden on the prosecutor which provides no meaningful or necessary benefit to a defendant. *State v. Vargas, supra,* also recognizes some of the anomalous and undesirable effects of *Burnham*.[11] Why should there be any distinction between the permanence of the intent to deprive of an employee who embezzles $100 by taking it out of the cash register, and a customer who reaches in the cash register and takes out $100? For the foregoing reasons we decline to follow *Burnham*.

An information is constitutionally adequate if it states each statutory element of a crime.[12] It is sufficient for the information to follow the language of the statute where such crime is defined, so long as its language is adequate to apprise the accused, with reasonable certainty, of

---

the thief, his appropriation was of his own property and thus could not be a trespass. R. Perkins, at 246–47."

[11]*State v. Vargas,* at 783 n.1 states:

"The complex common law history of theft by fraud or deception highlights the difficulty with the *Burnham* method of reading the common law into a codified criminal statute. The common law of larceny, in particular, contains a number of intricate doctrines which were more the result of historical circumstances than of any coherent theory of theft. For example, larceny was a common law felony, the penalty for which was execution. Some of the fine distinctions in the law of larceny can be attributed to judicial reluctance to impose the death penalty. Perkins urges that the disparate common law offenses be abolished in favor of a systematic statutory scheme. R. Perkins, [*Criminal Law*] at 233 [(2d ed. 1969)]. It is arguable that this was precisely the intent of the Washington Legislature when it codified the crime of theft in RCW 9A.56.020."

[12]*State v. Holt,* 104 Wn.2d 315, 319, 704 P.2d 1189 (1985).

the nature of the accusation.[13] The information charging Komok with theft in the third degree included statutory language sufficient to apprise Komok of the nature of the accusation.

We hold that the intent to *permanently* deprive is not an element of the crime of theft as defined in RCW 9A.56-.020(1)(a). Accordingly, the information meets constitutional standards. Our holding is narrow. The facts of some cases may raise genuine issues as to the duration and intent of the deprivation. We reserve judgment as to how a jury should be instructed in such cases, or, in a bench trial, what findings would be required to sustain a conviction.

### WRITTEN FINDINGS

Komok claims the failure of the trial court to set out in its written findings whether he acted with the intent to *permanently* deprive Lamonts of the goods requires reversal and vacation of the judgment. CrR 6.1(d) requires the trial judge to make formal findings of fact and conclusions of law as to each element charged.[14] Since we have held that theft does not require the intent to permanently deprive, no finding of such intent is necessary. The trial court made findings and conclusions as to each statutory element of the crime and, hence, the findings and conclusions support the judgment.

Affirmed.

SWANSON and SCHOLFIELD, JJ., concur.

Review granted at 113 Wn.2d 1006 (1989).

---

[13]*State v. Smith,* 49 Wn. App. 596, 598, 744 P.2d 1096 (1987), *review denied,* 110 Wn.2d 1007 (1988); *State v. Merrill,* 23 Wn. App. 577, 580, 597 P.2d 446 (1979); *State v. Randall,* 107 Wash. 695, 182 P. 575 (1919).

[14]*See also State v. Jones,* 34 Wn. App. 848, 664 P.2d 12 (1983); *State v. Russell,* 68 Wn.2d 748, 750, 415 P.2d 503 (1966).